UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BARRIE M. PETERSON,
Plaintiff-Appellant,

v.

No. 97-1680

ATLANTIC FUNDING CORPORATION;
SUPERIOR FINANCIAL SERVICES,
INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-1476-A)

Argued: May 5, 1998

Decided: June 29, 1998

Before NIEMEYER and WILLIAMS, Circuit Judges, and
HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Thomas Bacon, ALLRED, BACON, HALFHILL,
LANDAU & YOUNG, P.C., Fairfax, Virginia, for Appellant. James
Robert Schroll, BEAN, KINNEY & KORMAN, P.C., Arlington, Vir-
ginia, for Appellee Atlantic Funding; Janis Orfe, THE LAW

OFFICES OF JANIS ORFE, P.C., Fairfax, Virginia, for Appellee Superior Financial. **ON BRIEF:** C. Erik Gustafson, BEAN, KINNEY & KORMAN, P.C., Arlington, Virginia, for Appellee Atlantic Funding.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Barrie M. Peterson, individually, and Barrie M. Peterson, as Trustee [hereinafter collectively referred to as "Peterson"], appeal the district court's grant of summary judgment in favor of appellees. The district court found, as a matter of law, that no enforceable settlement agreement existed between Peterson, Atlantic Funding Corp. ("Atlantic") and Superior Financial Services, Inc. ("Superior").

We review a district court's grant of summary judgment de novo. See Higgins v. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The district court must evaluate the evidence in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Finding no error, we affirm the district court's entry of summary judgment.

On November 7, 1996, Peterson and Dominion Federal Savings and Loan Association executed a promissory note (the"note") in the principal amount of $1 million. The loan was secured by a second deed of trust on a certain parcel of real property, which consisted predominately of a twenty-two unit office complex known as the Dominion Professional Center ("DPC"). Signet Bank was the first lienholder on the DPC.

2

Dominion was subsequently taken over by the Resolution Trust Corporation ("RTC"). On August 8, 1991, RTC initiated an action against Peterson based upon non-payment of the note. On November 15, 1991, Peterson signed a consent to judgment in the sum of $1,217,201.96, which was reduced to a judgment by the district court. Shortly thereafter, Signet Bank foreclosed on its first deed of trust secured by the DPC. Signet Bank's foreclosure extinguished RTC's second deed of trust on the building.

In order to protect its interest in the loan, RTC, acting through its agent, Gemini Asset Managers, Inc. ("Gemini"), purportedly entered into an agreement with Peterson whereby Peterson agreed to purchase all of RTC's rights, title and interest in the loan documents and judgment for $250,000, of which $50,000 would be paid down and the remaining balance paid in ten monthly installments of $20,000. The parties' discussions were subsequently memorialized in a written settlement agreement (the "agreement"), which indicated the agreement was binding on the parties and their successors. This agreement was signed by Peterson and forwarded to Gemini. Importantly, however, the agreement was never signed by RTC or an authorized agent.

Eighteen months later, RTC sold its rights under the loan to Superior, who subsequently assigned its rights to Atlantic. Atlantic attempted to collect on the $1.2 million judgment, and Peterson instituted this suit. Peterson contends he entered into a binding settlement agreement with RTC and that appellees, as successors-in-interest to RTC, are bound by the agreement's provisions. In granting summary judgment to appellees, the district court found that because the agreement was never signed nor adopted by RTC, no contractual obligation arose from the agreement. Therefore, appellees were not bound by its terms.

Although the parties raise numerous arguments in support of their respective positions, the determinative issue before the court is whether a binding contract ever existed between RTC, its successors, and Peterson. The record demonstrates that numerous conversations and drafts of proposed agreements passed between Peterson and RTC in 1992 and 1993, through RTC's agent, Gemini. However, a final, binding contract between Peterson and RTC or its assigns never resulted from those discussions and correspondence. Because RTC

3

never signed the complicated settlement agreement, neither RTC nor its assigns may be held accountable to its terms.

When parties to a contract contemplate that their agreement will be reduced to a writing, the courts refuse to enforce the contract in the absence of a writing signed by the party to be charged. Most recently, this court reaffirmed that principle in a case, ironically, involving Peterson. In Peterson v. Cooley, No. 97-1764, 1998 WL 185281 (4th Cir. Apr. 21, 1998), the court affirmed the district court's determination that no contractual relationship existed between Peterson and Central Fidelity, a Virginia bank. Peterson argued that Central Fidelity made an oral offer to him to purchase certain notes from the bank for a $4.2 million payment plus a $200,000 deficiency note. Peterson contended a contractual relationship was created when he accepted the offer in a signed letter.

This court disagreed with Peterson's contention that the letter constituted an acceptance absent an agreement signed by all parties. The court noted that a "transaction of this size and complexity is normally embodied in a written contract." Id. at *5. Central Fidelity mailed Peterson a twenty-nine page settlement agreement, but Peterson never signed the agreement. Moreover, this court found that in failing to sign the document, "the Petersons themselves chose not to create a binding contractual relationship." Id.

This case presents a similarly deficient attempt by Peterson to create a contractual relationship where none exists. The putative settlement agreement consisted of eight single-spaced typed pages and involved a $1.2 million judgment. Both Peterson and RTC were represented by counsel who had to review the agreement prior to its execution. The agreement had been returned to Peterson to make certain revisions with a proviso that once the revisions were made, the agreement would be forwarded to RTC "for execution." J.A. p. 139. However, the record is bereft of evidence that RTC received the revised agreement signed by Peterson or ever executed the agreement.

It is apparent to the court that in an agreement of this size and complexity, the parties clearly contemplated that their agreement would be reduced to a final writing. All of the written correspondence between the parties looked to a final, signed agreement. By letter

4

dated May 12, 1992, Gemini, through counsel, indicated that RTC was "prepared to enter into an agreement" regarding its judgment against Peterson. J.A. p. 104. By letter dated June 10, 1993, Peterson's attorney recognized that the agreement was to be forwarded to RTC "for execution" and that when the executed originals were returned to Gemini, Peterson would deliver the initial payment of $50,000. J.A. p. 66. This correspondence evidences an intent that neither party would be bound, and no obligations triggered, until both Peterson and RTC signed the written settlement agreement. Peterson now argues that a binding settlement agreement was created when he mailed his signed copy of the revised settlement agreement to RTC. However, had Peterson genuinely believed at that time that such a deal was solidified, he would have mailed RTC his first payment as required in the agreement.

Peterson bears the burden of proving that an enforceable contract existed with RTC. However, Peterson's argument consists of little more than an impermissible attempt to shift the burden to the appellees to prove a negative, i.e., the non-existence of the agreement. Because Peterson has not demonstrated that a contractual relationship ever arose between himself and RTC, the district court correctly concluded that appellees were entitled to summary judgment. The court has considered Peterson's remaining claims for relief and finds them to be without merit.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED